**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **Thomas J. Calvey,** | ) | **CASE NO. 1:18 CV 2938** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| **Vs.** | ) | |
| | ) | |
| **Village of Walton Hills, et al.,** | ) | |
| | ) | **Memorandum of Opinion and Order** |
| **Defendants.** | ) | |

### INTRODUCTION

This matter is before the Court upon defendants' Motion for Summary Judgment (Doc. 29). This is a § 1983 action arising out of plaintiff's interactions with the Village of Walton Hills Police Department. For the reasons that follow, this motion is GRANTED.

### FACTS

Plaintiff Thomas Calvey filed his second amended complaint ("Complaint") against defendants the Village of Walton Hills, the Village of Walton Hills Police Department, Sargeant David Kwiatkowski, and Officer Thomas Cercek. The Complaint contains three claims for relief. Count One alleges a violation of 42 U.S.C. § 1983 for a deprivation of plaintiff's right to

1

substantive and procedural due process under both the federal and Ohio constitutions. Count Two alleges a violation of 42 U.S.C. § 1983 for a deprivation of plaintiff's right to liberty, safety, property, and privacy under both the federal and Ohio constitutions. Count Three is a state law claim for intentional infliction of emotional distress. The claims are asserted against all defendants in their individual and official capacities.

Written documentary evidence submitted to the Court establishes the following facts. From May 2016 through February 2018, plaintiff resided in various nursing facilities while recovering from cancer treatment. In June 2017, James Calvey, plaintiff's brother, purchased 18749 Alexander Drive, Walton Hills, Ohio ("the residence"). Plaintiff alleges this purchase was fraudulently made with his money. The residence was titled to James Calvey and Leona Calvey, plaintiff's mother. Plaintiff's name was not on the title. In March 2018, plaintiff moved into the residence with James and Leona Calvey.

On June 7, 2018, the Village of Walton Hills Police ("the police") received a call from James Calvey, requesting a medical squad because plaintiff's head was bleeding. However, the police dispatchers suspected this was a domestic violence situation and several police officers were dispatched to the scene. The police officers present included defendant Sargeant David Kwiatkowski ("Kwiatkowski"), defendant Officer Thomas Cercek ("Cercek"), and Walton Hills police chief Stanley Jaworski ("Jaworski").

Kwiatkowski testified that when he arrived at the residence, plaintiff informed him that James Calvey had pushed him, causing him to hit his head on the counter and fall into Leona Calvey. James Calvey was thereafter arrested and transported to jail. He was charged with domestic violence and ultimately plead guilty to a reduced charge.

Leona Calvey sustained injuries during the June 7, 2018 incident. On June 15, 2018, she underwent an operation for her injuries and was transferred to a nursing facility. She remained at this facility until July 27, 2018.

Meanwhile, on June 22, 2018, plaintiff obtained an *ex parte* civil protection order through the Cuyahoga County domestic relations court ("state court") against James Calvey. The order contained the following provisions: (1) James Calvey was to immediately vacate the residence; (2) plaintiff had exclusive possession of the residence and James Calvey was not to interfere with plaintiff's right to occupy the residence; (3) James Calvey was to surrender all keys and garage door openers to law enforcement; and (4) James Calvey was to remain 500 feet away from plaintiff. Leona Calvey was not referenced within this order and was not a party to the action.

On July 16, 2018, Leona Calvey obtained an *ex parte* civil protection order through the state court against plaintiff. Within this order, plaintiff was to remain 500 feet away from Leona Calvey, and not have any contact with her or interfere with her residence.

On July 27, 2018, Leona Calvey left the nursing facility and returned to the residence. That same date, she called the police advising them that plaintiff was at the residence. Police officers responded to the scene, including Kwiatkowski. According to Kwiatkowski's deposition testimony, he spent an hour at the residence attempting to "figure out exactly what we were going to do with these two protection orders." He called both the Village of Walton Hills law director and prosecutor for advice. It was eventually determined that until the state court clarified how the two protection orders were to be handled, plaintiff would stay in the mother in law suite and have access to the kitchen. Kwiatkowski warned plaintiff that if he had any

contact with Leona Calvey or caused a disturbance, he would be arrested.

According to plaintiff's deposition testimony, Kwiatkowski initially informed plaintiff that he could not be at the residence with Leona Calvey. Plaintiff testified that his attorney, Kwiatkowski, and the Village of Walton Hills law director then had a conference call in the driveway of the residence. After some discussion, plaintiff and his attorney agreed that both plaintiff and Leona Calvey would remain at the residence, but plaintiff would reside in the in-law suite, with access to the kitchen.

On July 28, 2018, Leona Calvey called the police twice with complaints about plaintiff. During the first phone call, Leona Calvey reported that she thought plaintiff had taken some of her mail. When police officers Grames and Cercek arrived at the residence, plaintiff denied taking any mail. Leona Calvey then called the police a second time that day, reporting that plaintiff was screaming and yelling at her. Police officers, including Cercek, responded to the scene. Plaintiff denied yelling at Leona, and the officers advised Leona Calvey that she could be arrested for false information. Leona Calvey then admitted that plaintiff had not been yelling and screaming at her.

On July 29, 2018, Leona Calvey called the police, reporting difficulty breathing after an encounter with plaintiff. Kwiatkowski and Cercek arrived at the residence to investigate. Kwiatkowski testified that Leona Calvey was "a wreck," "had a difficult time talking," and was shuttering and shaking. Kwiatkowski gave plaintiff the choice of either leaving the residence or being arrested.

According to plaintiff's deposition testimony, he heard Kwiatkowski shout from the kitchen that plaintiff had "15 minutes to gather [his] things together and [the police were] going

to take [him] to a hotel." Plaintiff ultimately decided to leave. Cercek transported plaintiff to the LaQuinta Hotel in Macedonia, Ohio.

Leona Calvey's grandson, James Calvey, Jr., was at the residence when Cercek and Kwiatkowski were present. The officers told James Calvey, Jr. that James Calvey could "return to the residence for the time being," but if plaintiff returned to the house "after this matter gets straightened out by the courts [James Calvey would] have to leave." The officers also requested a key to the residence in case of an emergency.

Plaintiff called the police later that day, reporting that he had called the residence to speak with his mother and James Calvey had gotten onto the phone and hung up on him. Plaintiff requested that the police go to the residence, but the police advised him that he would need to come down to the station to make a report. Plaintiff called back a half hour later, again re-iterating that James Calvey was at the residence. He was again told to come to the station to make a report.

On July 30, 2018, Kwiatkowski emailed all Walton Hills police department personnel, stating that until clarification was made by the state court, plaintiff was not permitted to return to the residence or he would face arrest. Plaintiff remained at the LaQuinta until September 2018. He has resided in various nursing facilities and hospitals ever since.

On January 11, 2019, the state court issued its final protection order as to the case pending between plaintiff and James Calvey. Within the findings of fact, the state court determined that Leona Calvey was a "willing participant" in the actions against plaintiff and had, under James Calvey's directives, lied to the police. The court found "that the exclusion of Leona, James Jr. and Leona's 'friends' from the Walton Hills residence, as well as the exclusion

5

of [James Calvey,] is equitable and fair to bring about the cessation of domestic violence against" plaintiff. The order then granted exclusive possession of the residence to plaintiff "regardless of title of said residence," and prohibited James Calvey from entering the residence or coming within 500 feet of plaintiff. Leona was not a party to this case.

On January 14, 2019, the state court dismissed Leona Calvey's *ex parte* civil protection order against plaintiff. Thereafter, plaintiff's attorney emailed the Walton Hills Police Department requesting assistance in removing James and Leona Calvey from the residence.

On January 28, 2019, plaintiff met a locksmith and two police officers at the residence. The police officers escorted James Calvey off the property. They did not place him under arrest. Plaintiff requested that Leona Calvey be removed from the residence. One of the police officers at the scene, Sergeant Walsh, advised plaintiff to "contact his attorney to inquire about an eviction notice" because they could not "remove [Leona Calvey] from the property without an eviction notice." Plaintiff thereafter left the residence and returned to an assisted living facility. He has not resided at the residence through the present.

This matter is now before the Court upon defendants' Motion for Summary Judgment. Plaintiff opposes the Motion.

## **STANDARD OF REVIEW**

Summary Judgment is appropriate when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56(c)); *see also LaPointe v. UAW, Local 600*, 8 F.3d 376, 378 (6th Cir. 1993). The burden of showing the absence of any such genuine issues of material facts rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," if any, which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex*, 477 U.S. at 323 (citing Fed. R. Civ. P. 56(c)). A fact is "material only if its resolution will affect the outcome of the lawsuit." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). Accordingly, the nonmoving party must present "significant probative evidence" to demonstrate that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir.1993). The nonmoving party may not simply rely on its pleading, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The evidence, all facts, and any inferences that may permissibly be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Eastman Kodak Co. v. Image Technical Servs., Inc.*, 504 U.S. 451, 456 (1992). However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Moreover, if the evidence is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citation omitted).

<u>ANALYSIS</u>

I.    <u>Federal Claims</u>

Counts One and Two assert claims under 42 U.S.C. § 1983.  Count One alleges that defendants violated plaintiff's substantive and procedural due process rights.  Count Two alleges that defendants violated plaintiff's "civil rights, namely, his right to liberty, safety, property, privacy and welfare."

**(A) Village of Walton Hills Police Department**

Plaintiff has asserted both of his federal claims against the Village of Walton Hills Police Department.  Defendant argues that the Village of Walton Hills Police Department is not *sui juris* and, therefore, cannot be sued.  The Court agrees and plaintiff does not provide any argument to the contrary.  It is well-established that police departments "are not *sui juris* and, therefore, cannot sue or be sued.  They are merely sub-units of the municipalities they serve." *Deir v. Lake County*, 2012 WL 1142467, *3 (N.D. Ohio April 4, 2012) (internal citations omitted).  *See also Carmichael v. City of Cleveland*, 571 Fed. App'x 426, 435 (6th Cir. 2014); *Elkins v. Summit County, Ohio,* 2008 WL 622038, *6 (N.D. Ohio Mar. 5, 2008).  Accordingly, the federal claims[1] asserted against the Village of Walton Hills Police Department are dismissed.

**(B) Village of Walton Hills**

Plaintiff also brings his § 1983 claims against the Village of Walton Hills and Kwiatkowski and Cercek ("the individual defendants") in their official capacities.  When a

---

[1]    Likewise, plaintiff's state law claims asserted against the Village of Walton Hills Police Department are dismissed.  *See Harris v. Sutton*, 918 N.E.2d 181, n. 1 (Ohio 8th App. Dist. Aug. 13, 2009)("the police department is not *sui juris* and cannot be sued as a separate entity.  It is subsumed within any judgment relating to the city.")

plaintiff sues local government officials and employees in their official capacity, the suit is treated as one against the municipality. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity."). It is well-established that a municipality

> 'cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.' *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Rather, liability attaches where the unconstitutional action 'implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated' by municipal officers, or where the deprivation results from governmental "custom." *Id.* The governmental action must be 'the moving force' behind the constitutional violation. *Id.*

*Hanson v. Madison County Detention Center*, 736 Fed. App'x 521, 541 (6th Cir. 2018).

A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision-making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations. *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).

As defendants point out, plaintiff has failed to allege a claim under *Monell* regarding any policy, custom, or failure to train. In response, plaintiff argues that the evidence establishes that there were actions "taken by officials with final decision-making authority and (given their frequency) show a tolerance of federal violations." However, plaintiff failed to allege in his Complaint the existence of a policy or custom of tolerance for federal rights violations, and has not sought leave to amend his Complaint to add such allegations. Moreover, even assuming plaintiff had alleged a *Monell* claim, where, as discussed below, no constitutional violation

9

occurs, the municipality "likewise cannot be held liable." *Hanson*, 736 Fed. App'x at 541.

Therefore, any § 1983 claims asserted against the Village of Walton Hills and the individual defendants in their official capacities are dismissed.

### (C) Kwiatkowski and Cercek

Plaintiff also asserts his § 1983 claims against Kwiatkowski and Cercek in their individual capacities. To prevail on a § 1983 claim, plaintiff must prove 1) the deprivation of a right secured by the Constitution or laws of the United States which was 2) caused by a person acting under the color of state law. *Winkler v. Madison County*, 893 F.3d 877 (6th Cir. 2018) (citations omitted). Where, as here, the individual defendants assert qualified immunity, the government officials may not be held liable if 1) the officers did not violate any constitutional guarantees or 2) the guarantee, even if violated, was not clearly established at the time of the alleged misconduct. *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (citations omitted). *See also Maye v. Klee*, 915 F.3d 1076, 1082 (6th Cir. 2019) ("In analyzing whether an official is entitled to qualified immunity, we must make two determinations: first, whether the plaintiff's version of the facts alleges the deprivation of a constitutional right; and second, whether that right was clearly established such that a reasonable official would have known his actions were unconstitutional.") Defendants argue that plaintiff cannot establish that any constitutional right was violated or that such violation was clearly established. For the following reasons, the Court agrees. Because plaintiff cannot establish the violation of a clearly established constitutional guarantee, the § 1983 claims fail and individual defendants are entitled to qualified immunity.

### *(1.) Procedural and Substantive Due Process (Count One)*

10

Plaintiff's arguments on procedural and substantive due process both pertain to the alleged deprivation of a property interest protected by the Fourteenth Amendment. The procedural and substantive components of the Due Process Clause are distinct[2] from each other and have different objectives. *Howard v. Grinage*, 82 F.3d 1343, 1349 (6th Cir. 1996). However, both "procedural and substantive due process claims require [plaintiff] to show that he has a property interest that was deprived." *Wayne Watson Enterprises, LLC v. City of Cambridge*, 2018 WL 5099629, at *3 (6th Cir. Oct. 19, 2018). Accordingly, the Court will first consider whether plaintiff had a constitutionally protected property interest.

Property interests "are not created by the Constitution" itself, but rather "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Bd of Regents v. Roth*, 408 U.S. 564, 577(1972). *See also Wayne Watson Enterprises, LLC*, 751 Fed. App'x at 764.

Plaintiff argues that he had a property interest in both the residence and the enforcement of his June 22, 2018 protection order. Plaintiff maintains that both of these property interests

---

[2]   Indeed, to prevail on a procedural due process claim under § 1983, a plaintiff must establish that (1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) he was not afforded adequate procedural rights prior to the deprivation of this interest. *Wedgewood Ltd. Partnership I v. Township of Liberty, Ohio*, 610 F.3d 340, 349 (6th Cir. 2010).

In order to prevail on a substantive due process claim under § 1983, a plaintiff must establish that an "arbitrary and capricious government action deprived [him] of a constitutionally protected property interest." *Warren v. City of Athens*, 411 F.3d 697, 707 (6th Cir. 2005). *See also Dinwiddie v. Beshear*, 2019 WL 4009835, *2 (6th Cir. 2019).

were created by the June 22, 2018[3] *ex parte* civil protection order against James Calvey, which granted plaintiff "exclusive possession of the residence." Plaintiff argues that because of this property interest, it was not only improper for the police to remove him from the residence on July 29, 2018, but also for the police to allow James Calvey back into the residence after July 29, 2018.

Defendants maintain that plaintiff did not have a property interest in either the residence or the enforcement of the protection order against James Calvey. They argue that since plaintiff did not have any legal title to the residence and Leona Calvey, who was the titled owner, had a valid protection order against plaintiff, the police were permitted to remove him from the residence. Defendants also maintain that plaintiff did not have a property interest in the enforcement of his June 22, 2018 protection order because its enforcement was "discretionary under Ohio law."

Upon review, the Court finds that plaintiff did not have a constitutionally protected property interest in either the residence or the enforcement of the June 22, 2018 protection order. As to plaintiff's purported property interest in the residence, it is undisputed that plaintiff was not the titled owner of the residence. Plaintiff did not have a lease or similar contract which

---

[3]       Plaintiff also raises arguments about his property interest in the January 2019 final protection order. However, neither Kwiatkowski or Cercek played a role in the enforcement of the final protection order or the reluctance of the police to remove Leona Calvey from the property after her protection order was dismissed. Indeed, it was Sergeant Walsh, who is not a named defendant, who advised plaintiff to "contact his attorney to inquire about an eviction notice" because they could not "remove [Leona Calvey] from the property without an eviction notice." Kwiatkowski and Cercek cannot be held liable for actions of another officer. Indeed, it is well-established that personal involvement of the defendant in alleged constitutional deprivations is a prerequisite to an award of damages under Section 1983. *Turner v. City of Taylor*, 412 F.3d 629, 643 (6th Cir. 2005).

would have otherwise created a property interest in the residence. Rather, plaintiff was simply staying with his mother and brother in their[4] home while he was recovering from cancer treatment. His mother, who was the owner of the residence, had a valid protection order against plaintiff, and the police chose to enforce[5] it when asking him to leave.

Plaintiff maintains that the state court created a property interest in the residence via the June 22, 2018 *ex parte* civil protection order because it granted him "exclusive possession" of the residence. The Court finds this argument unavailing. Plaintiff has provided no support for the proposition that the "exclusive possession" language contained in the civil protection order is equated with a property interest under Ohio law. Moreover, the Ohio statute under which the civil protection order was issued, O.R.C. §3113.31, noticeably does not provide for the creation of a property interest. Indeed, this provision provides, in relevant part,

> With respect to a petition involving family or household members, [a civil protection order may] grant possession of the residence or household to the petitioner or other family or household member, to the exclusion of the

---

[4] The Court acknowledges that plaintiff has placed great emphasis on how his brother and mother allegedly bought this home through fraudulent means. However, these actions were taken by private individuals, not state actors. Regardless of whether these accusations are true or not, the undisputed fact remains, and plaintiff concedes, that he was not the titled owner of the property.

[5] Plaintiff attempts to create an issue of fact by repeatedly suggesting that he did not violate the civil protection order Leona Calvey had against him and, therefore, the police had no basis to remove him from the residence. The Court disagrees. Viewing the evidence in a light most favorable to the plaintiff, it is clear that plaintiff was in violation of Leona's protection order. Leona Calvey's civil protection order required that plaintiff was to remain 500 feet away from her, and not have any contact with her or interfere with her residence. The fact that Leona Calvey and plaintiff were residing in the same home, standing alone, establishes that plaintiff was in violation of the protection order. Moreover, regardless of whether or not plaintiff had violated Leona Calvey's protection order, because plaintiff cannot establish a property interest in either the residence or the June 22, 2018 protection order, plaintiff's due process claims fail.

respondent, by evicting the respondent, when the residence or household is owned or leased solely by the petitioner or other family or household member, *or by ordering the respondent to vacate the premises, when the residence or household is jointly owned or leased by the respondent, and the petitioner or other family or household member.*

O.R.C. §3113.31(E)(1)(b) (emphasis added). Under this provision, where the respondent, i.e. James Calvey, owns the property, the civil protection order may require him to vacate the premises. It does not provide that James Calvey's ownership of the residence is somehow dissolved and transferred to plaintiff.

Plaintiff also suggests that his June 22, 2018 civil protection order somehow trumps Leona Calvey's ownership of the residence. However, plaintiff does not cite any legal authority for the proposition that a domestic relations court can intentionally or unintentionally exclude a property owner who is not a party to a civil protection order from her own residence.

Plaintiff points to *Powell v. Morales,*[6] 2006 WL 721354 (N.D. Ohio Mar. 17, 2006), to support his position that he had a protected property interest in the residence. This case is readily distinguishable. In *Powell*, the plaintiffs were legal residents of the property by virtue of a lease. *Id.* at *6. It was this lease which "demonstrated a constitutionally protected property interest in the Residence." *Id.* Here, however, plaintiff did not have a leasehold interest in the residence.

Similarly, the Court also finds that plaintiff had no property interest in the enforcement of

---

[6]     Plaintiff also briefly references *Collins v. Clancy,* 2014 WL 1653103 (S.D. Ohio Apr. 23, 2014), but provides no analysis as to why it supports his position. The Court has carefully reviewed this case and does not find that it lends any support to plaintiff's arguments. *See Collins v. Clancy*, 2014 WL 197839 (S.D. Ohio Jan. 15, 2014), *report and recommendation adopted*, 2014 WL 1653103 (S.D. Ohio Apr. 23, 2014).

his June 22, 2018 protection order against James Calvey.  While the police had removed James

Calvey from the residence initially, it is undisputed that they were aware he had come back onto

the property once plaintiff left on July 29, 2018.  Plaintiff argues this failure of the police to

enforce his June 22, 2018 protection order was a violation of his due process rights.

As noted above, property interests are created "by existing rules or understandings that

stem from an independent source such as state law." *Roth*, 408 U.S. at 577.  However, a plaintiff

"cannot possess a property interest in the receipt of a benefit when the state's decision to award

or withhold the benefit is wholly discretionary." *Med Corp., Inc. v. City of Lima*, 296 F.3d 404,

409 (6th Cir. 2002).

Plaintiff relies upon the language contained in the June 22, 2018 civil protection order to

support his claim that he had a property interest in its enforcement.  This order references O.R.C.

§3113.31, which, in relevant part, provides:

> any officer of a law enforcement agency shall enforce a protection order
> issued or consent agreement approved by any court in this state in
> accordance with the provisions of the order or agreement, including
> removing the respondent from the premises, if appropriate.

O.R.C., §3113.31(F)(4).  The order also references O.R.C., §2935.03, which provides that if a

police officer:

> has reasonable ground to believe that the offense of domestic violence
> or the offence of violating a protection order has been committed and
> reasonable cause to believe that a particular person is guilty of
> committing the offense, it is the preferred course of action in this state
> that the officer arrest and detain that person . . .

O.R.C. §2935.03(B)(3)(b).

Plaintiff argues[7] that the language contained in the civil protection order "clearly states that law enforcement must enforce its terms and conditions." While not well-articulated, plaintiff's argument appears to be that the mandatory language contained in the civil protection order and the relevant ORC provisions create an entitlement that rises to the level of a protected property interest for purposes of due process. For the following reasons, the Court disagrees.

The Supreme Court considered similar statutory language when determining whether a plaintiff had a property interest in the enforcement of a restraining order. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005). In *Castle Rock*, the plaintiff asserted a violation of her due process rights due to the police's failure to enforce a restraining order against her husband. *Id.* at 751. The Supreme Court reviewed the relevant state statutes, which contained language that a police officer "shall use every reasonable means to enforce a restraining order" and that a police officer "shall" make an arrest where there is probable cause that a violation of a restraining order has occurred. *Id.* at 759. The Supreme Court concluded that "these provisions of Colorado law [did not make] enforcement of restraining orders mandatory" and, therefore, the plaintiff did not have a property interest in the order's enforcement. *Id.* at 760, 766. The Supreme Court also observed that such an entitlement would not "resemble any traditional conception of property." *Id.* at 766.

The Sixth Circuit has also confronted a similar issue. *See Hudson v. Hudson*, 475 F.3d

---

[7]      Plaintiff also asserts that the chief of police, Stanley Jaworski, "acknowledged that law enforcement has no discretion as to how to enforce" a civil protection order. This is not an accurate reading of Chief Jaworkski's deposition testimony. In his deposition, Chief Jaworski testified that the language contained in the civil protection order did not explicitly provide for any police officer discretion. However, as discussed above, the statutory provisions referenced by the civil protection order do afford a degree of discretion to police officers.

741 (6th Cir. 2007).  In *Hudson*, the Sixth Circuit determined that the "enforcement of Tennessee protective orders does not create a property interest protected by the Due Process Clause of the Fourteenth Amendment."  *Id.* at 746.  The Sixth Circuit reasoned that while the Tennessee statute mandated that a police officer "shall" arrest an individual for violating a protective order, the statute also allowed for a police officer to exercise some discretion and did not "specify the precise action the officer must take when enforcing each and every protective order."  *Id.* at 744. The Sixth Circuit concluded that it had "skepticism" that the enforcement of a protection order could ever constitute a property interest, observing that "[i]mbuing these restraining orders with constitutional property value, protected by the Due Process Clause, would needlessly interfere with Tennessee's choice of how to allocate the resources necessary to enforce its domestic violence laws."  *Id.* at 746.

The Court finds that the same logic applies here.  As in *Castle Rock* and *Hudson*, the relevant O.R.C. provisions contain some mandatory language ("any officer of a law enforcement agency *shall* enforce a protection order"), but also leave room for a police officer to exercise discretion ("including removing the respondent from the premises, *if appropriate*," "it is the *preferred course of action* in this state that the officer arrest").  Because the manner of enforcement was within the discretion of the police, plaintiff cannot claim a property interest in the enforcement of the June 22, 2018 civil protection order.  *See Castle Rock* , 545 U.S. at 756 ("A benefit is not a protected entitlement if officials may grant or deny it in their discretion.").

Plaintiff argues that any reliance upon *Castle Rock* is "completely misplaced."  He asserts that it is not the fact that the police did not arrest James Calvey, but the fact that the police were aware he had returned to the residence, in violation of the protection order, and they did not

17

remove him from the property so plaintiff could "regain exclusive possession." Regardless of which action plaintiff wanted the police to take (i.e. arrest versus removal from the residence), because Ohio law affords discretion to police officers with respect to the enforcement of protection orders, a property interest cannot be claimed. *See Richardson v. Township of Brady*, 218 F.3d 508, 517 (6th Cir. 2000) (a plaintiff "can have no legitimate claim of entitlement to a discretionary decision").

Accordingly, because plaintiff did not have a constitutionally protected property interest in either the residence or the enforcement of the June 22, 2018 protection order, both his procedural and substantive due process claims fail.

Morever, even if a constitutional violation has occurred, Kwiatkowski and Cercek would still be entitled to qualified immunity unless the plaintiff is able to show that (1) the constitutional right was clearly established at the time such that a reasonable official would have understood that he was violating that right; and (2) the official's action was objectively unreasonable in light of the clearly established rights. *Sample v. Bailey*, 409 F.3d 689, 696–97 (6th Cir. 2005). Plaintiff wholly fails to address whether the guarantee violated was "clearly established" at the time of the alleged misconduct. Rather, plaintiff summarily asserts that he has "clearly established" a constitutionally protected property right existed and because the events on July 28 and July 29, 2018 are "so fact specific," a "jury must decide whether Defendants' actions were reasonable." However, the law is clear that in order to show a constitutional guarantee is "clearly established," "a plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Arrington-Bey,* 858 F.3d at 993 (citing *White v. Pauley*, 137 S.Ct. 548 (2017)). *See*

*also Matthews v. Copeland*, 2019 WL 3286176, *2 (6th Cir. 2019) ("A plaintiff can establish that a right was clearly established by citing to cases of controlling authority in their jurisdiction at the time of the incident or a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.")(internal quotations omitted) Plaintiff does not identify any Sixth Circuit or Supreme Court case with a similar fact pattern that would have given fair warning to Kwiatkowski and Cercek that their actions were in violation of plaintiff's due process rights.

Indeed, these officers were faced with competing protection orders – one which granted "exclusive possession" of the residence to plaintiff and the other which prohibited plaintiff from coming within 500 feet of the owner of said residence. Kwiatkowski made a good faith effort to discern what his obligations were in terms of enforcement by contacting the village law director and prosecutor. He also attempted to mediate between plaintiff and Leona Calvey and was able to initially get them, with the agreement of plaintiff's attorney, to reside at the residence together. However, once the situation escalated between Leona and plaintiff, it was reasonable for Kwiatkowski and Cercek to ask plaintiff to leave under threat of arrest, as Leona had a valid[8] protection order against him. With respect to James Calvey, the police removed him from the residence twice, on June 7, 2018 and again in January 2019, in compliance with plaintiff's protection orders. While James Calvey returned to the residence in the interim, plaintiff never filed a police report, despite the recommendation of the police to do so. Under the facts

---

[8]     Plaintiff suggests that the officers should have discerned, despite a valid *ex parte* protection order being in place, that any accusations Leona Calvey had made against plaintiff were false. However, the fact that Leona Calvey's protection order was ultimately dismissed by the state court due to her lack of credibility has no bearing on Kwiatkowski and Cercek's decision to enforce it when it was valid.

presented, plaintiff has failed to identify any legal precedent which suggests that these actions were "plainly incompetent" or in violation of "clearly established law." *Mullins v. Cyranek*, 805 F.3d 760, 765 (6th Cir. 2015).

Accordingly, as plaintiff has failed to identify a violation of any clearly established constitutional right that a reasonable officer would have known at the time, the Court grants summary judgment to Kwiatkowski and Cercek on Count One.

### *(2.) Right to Liberty, Safety, Property, and Privacy (Count Two)*

In Count Two of the Complaint, plaintiff asserts a § 1983 claim for the "deprivation of right to liberty, safety, property, and privacy." Defendants argue that plaintiff has offered no support for this claim and that this claim is duplicative of the due process claims contained within Count One. The Court agrees. Beyond listing this claim in a heading, plaintiff provides no argument or factual support for it in his brief in opposition. Accordingly, summary judgment on this claim as to all defendants is proper. *See, e.g., Wilson v City of Shaker Heights*, 2017 WL 5125528, *7 (N.D. Ohio Nov. 2, 2017), *affirmed by* 741 Fed. App'x 312 (6th Cir. 2018); *Fuller v. Cuyahoga Metropolitan Housing Authority*, 2007 WL 218724, n.3 (N.D. Ohio Jan. 25, 2007) ("the Court is unaware of any claim for deprivation of the constitutional right to 'liberty, health, safety, privacy and welfare' that exists separate and apart from a due process claim"), *affirmed by* 334 Fed. App'x 732 (6th Cir. 2009).

## II.     State Law Claims[9]

### (A) Ohio Constitutional Claims (Counts One and Two)

In Counts One and Two, plaintiff, without citing any specific provisions, asserts claims

---

[9]     Although the federal claims have been dismissed, this Court exercises its discretion to consider the state law claims.

under the Ohio Constitution. According to defendants, summary judgment is appropriate because no private right of action exists under the Ohio Constitution. According to plaintiff, there is a private constitutional remedy under Article I, Section 16 of the Ohio Constitution.

The Ohio Supreme Court has held that a provision under the Ohio Constitution only creates a private cause of action if it is self-executing. *See Provens v. Stark Cty. Bd. of Mental Retardation & Developmental Disabilities*, 594 N.E.2d 959, 966 (1992) (finding no private constitutional remedy where Ohio Constitution itself did not provide for a civil damage remedy). "A constitutional provision is self-executing when it is complete in itself and becomes operative without the aid of supplemental or enabling legislation." *State v. Williams*, 88 Ohio St. 3d 513, 521 (2000).

Article I, Section 16, of the Ohio Constitution provides: "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay. Suits may be brought against the state, in such courts and in such manner, as may be provided by law." Ohio courts, in reviewing this provision, have consistently found that it is not self-executing and, therefore, does not create a private course of action. *See, e.g., Autumn Care Center, Inc. v. Todd*, 22 N.E.3d 1105, 1109 (Ohio. App. 5th Dist. 2014); *PDU, Inc. v. City of Cleveland*, 2003-Ohio-3671 at ¶21 (Ohio App. 8th Dist. 2003)("The language of Article I, Sections 2, 11, and 16 is not sufficiently precise to provide clear guidance to the courts with respect to enforcement of its terms or application of its provisions"); *Estate of Tokes v. Dept. of Rehabilitation and Corr.*, 2019-Ohio-1794 at ¶29 (Ohio App. 10th Dist. 2019)("Section 16 is not self-executing under its own plain language"). Moreover, district courts within this circuit have also found that the Ohio

Constitution does not provide a private cause of action under Article I, Section 16. *See Moore v. City of Cleveland*, 388 F.Supp.3d 908, 919 (N.D. Ohio May 21, 2019) ("Ohio law does not authorize private suits for violations of the Ohio Constitution."); *Gibson v. Mechanicsburg Police Department*, 2017 WL 2418317, *5 (S.D. Ohio June 2, 2017). Plaintiff fails to identify any legal precedent to the contrary.

Consistent with this precedent, the Court finds that Article I, Section 16 does not create a private cause of action. *See Hagedorn v. Cattani*, 715 Fed App'x 499, 509 (6th Cir. 2017)(cautioning courts to avoid "interpretations of state law that could greatly expand liability"). Accordingly, plaintiff's claims for violations of the Ohio Constitution found within Counts One and Two are dismissed as to all defendants.

### (B) Intentional Infliction of Emotional Distress (Count Three)

#### (1.) Village of Walton Hills

In Count Three, plaintiff alleges that the Village of Walton Hills is liable for intentional infliction of emotional distress. Defendant argues that the Village of Walton Hills is immune from liability because it is a political subdivision and none of the limited exceptions under O.R.C. §2744.02 apply. According to plaintiff, immunity does not apply to this type of claim.

Upon review, the Court agrees with defendant. Ohio's Political Subdivision Tort Liability act provides for broad immunity to political subdivisions for claims of injury, death, or loss to persons or property. O.R.C. §2744.02(A)(1). This immunity is subject to the five exceptions,[10] none of which are applicable to plaintiff's claim.

---

[10] These exceptions are injury, death, or loss to person or property caused by (1) the negligent operation a motor vehicle; (2) the negligent performance of acts by their employees with respect to proprietary functions of the political subdivisions; (3) their negligent failure to keep public roads in repair and other negligent failure

22

Plaintiff argues immunity only applies to negligent conduct, not the "gross negligence and recklessness" displayed by the defendants. However, for a political subdivision, only the *exceptions* to immunity apply to negligent conduct. *See* O.R.C. §2744.02(B). These exceptions do not apply to the intentional torts of a political subdivision's employees. *Ohio ex rel. Faulker v. City of Middletown, Ohio*, 688 Fed. App'x 377, 380-381 (6th Cir. 2017) (finding the exceptions contained under O.R.C. §2744.02(B) do not "expose municipalities to liability for the intentional torts of municipal employees"). *See also Wilson v. Stark County Dep't of Human Services*, 639 N.E.2d 105, 107 (Ohio 1994) ("There are no exceptions to immunity for the intentional torts of fraud and intentional infliction of emotional distress as alleged in this case."). Therefore, Plaintiff's state law claim of intentional infliction of emotional distress against the Village of Walton Hills fails as a matter of law. Accordingly, the Court grants summary judgment in favor of the Village of Walton Hills[11] on this claim.

### (2.) Kwiatkowski and Cercek

Plaintiff also alleges that Kwiatkowski and Cercek are liable for intentional infliction of emotional distress in their individual capacities. Defendants argue that plaintiff has presented no

---

to remove obstructions from public roads; (4) the negligence of their employees that occurs within or on the grounds of, and is due to physical defects within or on the grounds of, buildings that are used in connection with the performance of a governmental function; and (5) any liability that is expressly imposed by the Ohio Revised Code. O.R.C. §2744.02(B).

[11] As with the federal claims, state law claims asserted against a defendant in his official capacity are considered a claim against the municipality. *See Warner v. Wood County Sheriff's Dept*., 2008 WL 4449450, *9 (N.D. Ohio Sept. 30, 2008) (citations omitted) ("Chapter 2744 of the Ohio Rev. Code provides that a suit against an employee of a political subdivision in the employee's official capacity constitutes a suit against the political subdivision.") Accordingly, because the Village of Walton Hills is immune from liability under Count Three, the individual defendants in their official capacities are immune as well.

evidence to support a claim for intentional infliction of emotional distress.[12]  Plaintiff does not directly address this argument and instead asserts that immunity under O.R.C. §2744.03 (A)(6) is not available to these defendants.

Under Ohio law, to establish a *prima facie* case of intentional infliction of emotional distress, a plaintiff must show that: (1) the defendant intended to cause, or recklessly caused, the plaintiff serious emotional distress; (2) the defendant's conduct was "extreme and outrageous;" and (3) the defendant's conduct was the proximate cause of the plaintiff's serious emotional distress.  *Lopez v. American Family Ins. Co*, 618 F. Appx. 794, 804 (6th Cir 2015) (citing *Phung v. Waste Mgmt.*, 71 Ohio St.3d 408, 644 N.E.2d 286 (Ohio 1994)).  To be considered "serious emotional distress" under Ohio law, there must be a psychic injury that is "both severe and debilitating," where "a reasonable person, normally constituted, would be unable to cope adequately with a mental distress engendered by the circumstances of the case."  *Lopez,* 618 F.Appx. at 804-805.

Examples of serious emotional distress "include traumatically induced neurosis, psychosis, chronic depression, or phobia."  *Id.*  Proof of serious emotional distress "may be offered in the form of expert medical testimony, but expert opinion is not indispensable.  Lay witnesses acquainted with the plaintiff may also testify to significant changes that they have observed in the emotional or habitual makeup of the plaintiff."  *Uebelacker v. Cincom Systems, Inc.*, 549 N.E.2d 1210, 1220 (Ohio App. 1st Dist. 1988)(citing *Paugh v Hanks*, 6 Ohio St.3d 72,

---

[12]     Defendants alternatively argue that Kwiatkowski and Cercek are immune from liability because they are employees of a political subdivision and none of the exceptions under O.R.C. §2744.03 apply.  The Court need not address this argument because plaintiff cannot establish a *prima facie* case of intentional infliction of emotional distress.

80 (1983)).

Upon review, the Court finds that plaintiff has not presented evidence sufficient to establish a *prima facie* case of intentional infliction of emotional distress under Ohio law. While plaintiff has alleged that he has "serious emotional distress" that is "of such a nature that no reasonable person could endure it," he has not presented any evidence of such. Indeed, plaintiff has not named any symptoms or offered any specifics as to how he has suffered, such as increased anxiety, depression, or panic attacks. Nor has plaintiff sought any medical treatment for his alleged psychological injuries and has not indicated that he has any plans to do so. Therefore, plaintiff's intentional infliction of emotional distress claims must fail because plaintiff has not presented any evidence that he has suffered a severe and debilitating psychic injury caused by defendants' conduct. *See Campbell v. Triad Financial Corp.*, 2007 WL 2973598, *13 (N.D. Ohio Oct. 9, 2007)("Plaintiffs claiming severe and debilitating emotional injury must present some guarantee of genuineness in support of their claim, such as expert evidence, to prevent a court from granting summary judgment in favor of defendant").

Accordingly, the Court grants summary judgment in favor of defendants Kwiatkowski and Cercek on this claim.

**CONCLUSION**

For the foregoing reasons, defendants' Motion for Summary Judgment is GRANTED.

Judgment is entered in favor of defendants on all claims.

IT IS SO ORDERED.


   /s/ Patricia A. Gaughan          
PATRICIA A. GAUGHAN
United States District Judge
Dated: 1/15/20          Chief Judge